UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

ANDREY PICINICH,                                    **DOCKET NO.:**

                                    Plaintiff,

               -against-

NASSAU COUNTY, NASSAU COUNTY POLICE            **COMPLAINT**
DEPARTMENT, NASSAU COUNTY POLICE
DEPARTMENT EMERGENCY AMBULANCE
BUREAU, NASSAU COUNTY POLICE OFFICER
JOHN DOES #1-10 (fictitiously named), NASSAU
COUNTY POLICE OFFICER AREVALO, NASSAU
COUNTY POLICE DEPARTMENT AMT DAVID REED,       **Plaintiff demands a trial**
HELBERT A. BONILLA, individually, JOHN DOES #1-  **by jury.**
10 (fictitiously named), NASSAU COUNTY DISTRICT
ATTORNEY, and NASSAU COUNTY ASSISTANT
DISTRICT ATTORNEY JOHN DOES #1-10 (fictitiously
named),

                                    Defendants.
-------------------------------------------------------------------- X

       Plaintiff, ANDREY PICINICH, by his attorneys, THE RUSSELL FRIEDMAN LAW

GROUP, LLP, complaining of the defendants, NASSAU COUNTY, NASSAU COUNTY

POLICE DEPARTMENT, NASSAU COUNTY POLICE DEPARTMENT EMERGENCY

AMBULANCE BUREAU, NASSAU COUNTY POLICE OFFICER JOHN DOES #1-10

(fictitiously named), NASSAU COUNTY POLICE OFFICER AREVALO, NASSAU COUNTY

POLICE DEPARTMENT AMT DAVID REED, HELBERT A. BONILLA, individually, JOHN

DOES #1-10, (fictitiously named), NASSAU COUNTY DISTRICT ATTORNEY, and

NASSAU COUNTY ASSISTANT DISTRICT ATTORNEY JOHN DOES #1-10 (fictitiously

named) (hereinafter collectively referred to as "Defendants"), respectfully alleges as follows:

## NATURE OF ACTION

       1.     This is an action for deprivation of Plaintiff's civil rights, committed by

Defendants while acting in concert and under color of state law, of Plaintiff's rights, liberties,

PF/D211079/FL2579

and immunities as guaranteed to him by reason of the Fourth and Fourteenth Amendments to the United States Constitution. This Court is authorized to grant Plaintiff relief under 42 U.S.C. §§ 1983 and 1988.

## JURISDICTION

2.       Jurisdiction in this matter is invoked in accordance with 28 U.S.C. § 1331 and 28 U.S.C. § 1367.  Plaintiff further invokes the supplemental jurisdiction of the Court to hear and decide claims arising out of the pendant state claims pursuant to 28 U.S.C. § 1376(a).

## VENUE

3.       Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) since all of the events and omissions giving rise to Plaintiff's claims occurred within the County of Nassau; the actual place of employment of all of the individual Defendants is the County of Nassau in the Eastern District of New York, and the County of Nassau is within the jurisdiction of the Eastern District of New York.  The events surrounding this lawsuit occurred in the County of Nassau, in the Eastern District of New York.  Additionally, Plaintiff resides within the County of Nassau in the Eastern District of New York.

## PARTIES

4.       Plaintiff, ANDREY PICINICH (hereinafter referred to as "PICINICH" or "Plaintiff"), is a resident of the State of New York, is a resident of the United States who lives within the Eastern District of New York.

5.       Defendant, NASSAU COUNTY (hereinafter referred to as "NASSAU COUNTY"), is a municipal subdivision of the State of New York, duly existing by reason of and pursuant to the laws of the State of New York.

PF/D211079/FL2579

6.      Upon information and belief, at all relevant times described herein, Defendant COUNTY, by its agents and/or employees operated, maintained and controlled the NASSAU COUNTY POLICE DEPARTMENT and NASSAU COUNTY POLICE DEPARTMENT EMERGENCY AMBULANCE BUREAU.

7.      Upon information and belief, at all relevant times described herein, Defendant NASSAU COUNTY POLICE DEPARTMENT (hereinafter referred to as "NCPD") is a subdivision and/or agency of Defendant NASSAU and has an office at 1490 Franklin Avenue, Mineola, New York.

8.      Upon information and belief, at all relevant times described herein, Defendant NASSAU COUNTY POLICE DEPARTMENT EMERGENCY AMBULANCE BUREAU (hereinafter referred to as "EAB") is a subdivision and/or agency of Defendant NASSAU and has an office at 1490 Franklin Avenue, Mineola, New York.

9.      Upon information and belief, at all relevant times described herein, Defendant NASSAU COUNTY POLICE OFFICER JOHN DOES #1-10 (hereinafter referred to as "PO JOHN DOES"), are individuals and employees of Defendant NASSAU with an actual place of employment within the County of Nassau, State of New York.

10.      Upon information and belief, at all relevant times described herein, Defendant NASSAU COUNTY POLICE OFFICER AREVALO (hereinafter referred to as "AREVALO"), is an individual and employee of Defendant NASSAU with an actual place of employment within the County of Nassau, State of New York.

11.      Upon information and belief, at all relevant times described herein, Defendant NASSAU COUNTY POLICE DEPARTMENT AMT DAVID REED (hereinafter referred to as

"REED"), is an individual and employee of Defendant NASSAU with an actual place of employment within the County of Nassau, State of New York.

12.     Upon information and belief, at all relevant times described herein, Defendant HELBERT A. BONILLA (hereinafter referred to as "BONILLA"), being sued in his individual capacity, was acting under the color of state law, is an employee of the State of New York with an actual place of employment within the County of Nassau, State of New York.

13.     Upon information and belief, at all relevant times described herein, Defendant JOHN DOES #1-10 (hereinafter referred to as "JOHN DOES"), also named in their individual capacity, were acting under the color of state law, are employees of the State of New York with actual place of employment within the County of Nassau, State of New York.

14.     Upon information and belief, at all relevant times described herein, Defendant NASSAU COUNTY DISTRICT ATTORNEY (hereinafter referred to as "NCDA") is a subdivision and/or agency of Defendant NASSAU and has an office at 262 Old Country Road, Mineola, New York.

15.     Upon information and belief, at all relevant times described herein, Defendant NASSAU COUNTY ASSISTANT DISTRICT ATTORNEY JOHN DOES #1-10 (hereinafter referred to as "ADA JOHN DOES"), are individuals and employees of Defendant NASSAU with an actual place of employment within the County of Nassau, State of New York.

## FACTUAL ALLEGATIONS

16.     On or about January 6, 2017, PICINICH was lawfully driving a motor vehicle, New York State license plate number GJH4217.

PF/D211079/FL2579

17.     On the aforementioned date, PICINICH was driving the motor vehicle on New York Meadowbrook Parkway, Exit M4, near the ramp to Charles Lindburgh Boulevard, County of Nassau, State of New York.

18.     While driving on the aforementioned public highway at approximately 8:00 P.M., PICINICH experienced a seizure while operating the aforementioned motor vehicle.

19.     As a result of the seizure, PICINICH lost control of his vehicle. His vehicle veered off the roadway and into a tree in the vicinity of the Meadowbrook Parkway, Exit M4.

20.     Upon information, PICINICH's vehicle's automated collision notification system called 911. Upon information, soon thereafter, NCPD, EAB, BONILLA, REED, AREVALO, PO JOHN DOES and JOHN DOES arrived at the scene of the accident.

21.     NCPD and/or EAB and/or BONILLA and/or REED and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES did not witness the accident. According to the accident report, when BONILLA came upon the vehicle, the doors were locked and the engine was still running. In the accident report, BONILLA states as follows:

> OP-V1 WAS NOT RESPONDING TO PATROLS ATTEMPTS TO OBTAIN HIS ATTENTION WHEN KNOCKING ON THE DRIVERS SIDE WINDOW. PATROL CONCERNED WITH OP-V1'S WELFARE BROKE, THE REAR PASSENGER WINDOW TO GAIN ENTRY AND ACCESS OP-V1. OP-V1 APPEARED TO BE UNINJURED FROM THE ACCIDENT BUT APPEARED TO BE EXPERIENCING A POSSIBLE MEDICAL EPISODE OF SOME SORT. OP-V1 WAS TRANSPORTED TO NASSAU UNIVERSITY MEDICAL CENTER FOR EVALUATION

22.     BONILLA then gained entry into PICINICH's vehicle by smashing the passenger window. At that time, BONILLA's assessment of the scene was that PICINICH was "experiencing a possible medical episode."

23.     PICINICH was subsequently brought to Nassau County University Medical Center where he was treated.  At no time while present at the scene of the accident or at the

PF/D211079/FL2579

hospital was PICINICH able to communicate with NCPD, EAB, BONILLA, REED, AREVALO, PO JOHN DOES and/or JOHN DOES.

24.     Notwithstanding the fact that NCPD and/or EAB and/or BONILLA and/or REED and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES did not witness the accident or the events which precipitated same, NCPD and/or EAB and/or BONILLA and/or REED and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES, PICINICH was charged with a violation of Vehicle and Traffic Law § 1128(a) "Moved from Lane Unsafely."

25.     Notwithstanding the fact that NCPD and/or EAB and/or BONILLA and/or REED and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES possessed no evidence of illegal drug use on the part of PICINICH, PICINICH was nonetheless charged with violating Vehicle and Traffic Law § 1192(4).

26.     In effectuating the arrest, NCPD and/or EAB and/or BONILLA and/or REED and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES were acting under the color of law.

27.     NCPD and/or BONILLA and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES fabricated false criminal charges. There was no legitimate basis and/or lawful authority for the criminal charges brought against PICINICH.

28.     Based upon the foregoing along with the other facts and circumstances surrounding the arrest and charging of PICINICH, it is respectfully submitted that NCPD, and/or BONILLA and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES falsely charged and arrested PICINICH without possessing probable cause for either charge.

29.     PICINICH was further subjected to degrading and abusive treatment by NCPD and/or EAB and/or BONILLA and/or REED and/or AREVALO and/or PO JOHN DOES and/or

PF/D211079/FL2579

JOHN DOES. Specifically, the aforementioned individuals subjected PICINICH to unwarranted verbal abuse and, further, converted his phone and took degrading photos of PICINICH without his consent or permission solely to intimidate and humiliate PICINICH.

30.     After charging and arresting PICINICH, NCPD and/or BONILLA and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES initiated the prosecution of PICINICH for Vehicle and Traffic Law § 1128(a) and Vehicle and Traffic Law § 1192(4).

31.     NCPD and/or BONILLA and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES lacked probable cause for the initiation of the prosecution and/or continued same his probable cause was vitiated.

32.     PICINICH was actually prosecuted by NCPD and/or BONILLA and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES and/or NCDA and/or ADA JOHN DOES and said prosecution was executed with malice.  The prosecution of PICINICH was terminated favorably to PICINICH.

33.     As such, it is respectfully submitted that NCPD and/or BONILLA and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES and/or NCDA and/or ADA JOHN DOES maliciously prosecuted PICINICH.

34.     Notwithstanding the utter lack of evidence, NCPD and/or BONILLA and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES and/or NCDA and/or ADA JOHN DOES publicized the baseless arrest and prosecution of PICINICH.

35.     That the initiation and continuation of the criminal charges was to insulate NCPD and/or EAB and/or BONILLA and/or REED and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES and/or NCDA and/or ADA JOHN DOES from liability for their illegal conduct and/or unconstitutional actions. NCDA and/or ADA JOHN DOES continued the prosecution of

PICINICH with full knowledge of the falsity of the charges. During which, PICINICH was deprived of his liberty, caused to suffer economic hardship, physical harm, mental anguish, pain and suffering, exposed to disgrace, public humiliation and embarrassment.

36.     The above conduct has been and is known to NASSAU COUNTY. Despite this knowledge, NASSAU COUNTY has failed to take any action.

37.     Pursuant to New York State General Municipal Law, PICINICH served a Notice of Claim upon NASSAU COUNTY within the 90-day statutory period, giving Notice of these claims to the extent required by Law.

38.     Pursuant to Section 50-h of the New York State General Municipal Law, PICINICH appeared for a hearing that was conducted on behalf of NASSAU COUNTY.

**AS AND FOR PLAINTIFF'S FIRST CAUSE OF ACTION**
**FOR FOURTH, FIFTH, AND FOURTEENTH AMENDMENT VIOLATIONS**
**FALSE ARREST, EQUAL PROTECTION AND DUE PROCESS**
**42 U.S.C. § 1983**

39.     PICINICH repeats and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

40.     Defendants BONILLA and JOHN DOES acting under color of law violated the Fourth, Fifth, and Fourteenth Amendments by subjecting PICINICH to unequal treatment under the law, by way of their unauthorized and false arrest, assault, and BONILLA and JOHN DOES' improper and wrongful arrest was without any violation of the law and absent probable cause or any reasonable suspicion of any criminal activity having been committed by PICINICH.

41.     Defendants NCPD and/or AREVALO and/or PO JOHN DOES acting under color of law and powers prescribed to them by the United States Constitution, federal and state laws, violated the Fourth, Fifth, and Fourteenth Amendments by subjecting PICINICH to unequal

treatment under the law, by way of their unauthorized and false arrest, assault, and failure to intervene. Defendants' improper and wrongful arrest was without any violation of the law and absent probable cause or any reasonable suspicion of any criminal activity having been committed by PICINICH.

42.     On or about January 6, 2017, PICINICH was falsely arrested, falsely seized, and falsely detained, deprived of his freedom, subjected to humiliation and ridicule, his picture unlawfully taken and unlawfully imprisoned by Defendants in violation of the civil and constitutional rights afforded to him via the Fourth Amendment and the Due Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution, as well as 42 U.S.C. § 1983. All acts by Defendants were committed under color of law, thus depriving PICINICH of rights secured by federal law and the United States Constitution.

43.     On or about January 6, 2017, Defendants NCPD and/or BONILLA and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES falsely arrested, falsely seized, falsely detained, and assaulted PICINICH, thus depriving him of his freedom and violating his civil rights. Said seizure was made without probable cause, as NCPD and/or BONILLA and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES were of the knowledge that PICINICH had committed no crime.

44.     Such seizure, arrest, and detention were ordered, directed, and carried out by NCPD and/or BONILLA and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES, all of whom actively instigated and encouraged the violation of PICINICH's rights.

45.     Defendants NCPD and/or BONILLA and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES each took an active role in creating and manufacturing the allegations

against PICINICH, solely for the purpose of depriving PICINICH of his freedom, and not to effectuate justice.

46.     As part of the false arrest, detention, and accusations, Defendants NCPD and/or BONILLA and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES caused PICINICH to be deprived of his liberty, without probable cause. Furthermore, as a direct result of said actions, PICINICH was unjustly exposed to disgrace, public humiliation, injury and embarrassment.

47.     Defendants NCPD and/or BONILLA and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES individually and collectively knew at the time of PICINICH's arrest, and at all times since then, that there was no evidence to support any allegation that he had violated New York VTL § 1192(3).

48.     In arresting and detaining PICINICH, Defendants NCPD and/or BONILLA and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES knew or should have known that they were violating federal law and PICINICH's constitutional rights set forth herein and had failed to prevent the same and, therefore, acted in concert to harm PICINICH.

49.     Defendants NCPD and/or BONILLA and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES, separately and in concert, acted outside the scope of their jurisdiction and without authorization of law and each of Defendants NCPD and/or BONILLA and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES, separately and in concert, acted willfully, knowingly, and purposefully with the specific intent to deprive PICINICH of his right to freedom from illegal seizure of his person, freedom from illegal detention and imprisonment; all rights that are secured to PICINICH by the Fourth Amendment, the due process clause of the Fifth and Fourteenth Amendments of the United States Constitution, and by 42 U.S.C. § 1983.

PF/D211079/FL2579

50.     As a direct and proximate result of the aforesaid acts of Defendants NCPD and/or BONILLA and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES, PICINICH suffered great physical harm, mental anguish and violation of rights from then until now and he will continue to so suffer in the future having been greatly humiliated and mentally injured, as a result of the foregoing acts of Defendants NCPD and/or BONILLA and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES.

51.     PICINICH was forced to incur great expense and special damages to date for his injuries, attorney's fees, investigation expenses, losses and other expenses in clearing his name against the unfounded and unwarranted allegations by Defendants NCPD and/or BONILLA and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES which have been a serious burden to PICINICH.

52.     As a result of said baseless false arrest and abuse of process, PICINICH has suffered continued emotional damage, including prolonged stress and anxiety, fear, and frustration, and has been harmed monetarily in his incurring of medical fees, attorney fees, lost business opportunities, and other expenses incurred.

53.     As a proximate result of Defendants NCPD and/or BONILLA and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES' intentional and malicious actions, PICINICH was greatly humiliated, injured in his reputation, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great pain and mental anguish, all to PICINICH's damage in a sum to be provided at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), plus punitive damages and attorney's fees pursuant to Title 42 § 1988.

PF/D211079/FL2579

## AS AND FOR PLAINTIFF'S SECOND CAUSE OF ACTION
## FOR OFFICIAL MISCONDUCT (1983)

54.     PICINICH repeats and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

55.     Defendants NCPD and/or BONILLA and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES subjected PICINICH to degrading and abusive treatment at Nassau University Medical Center.

56.     Further, Defendant(s) NCPD and/or BONILLA and/or AREVALO and/or PO JOHN DOES and/or JOHN DOES unlawfully and without permission took photographs of PICINICH.

57.     That by reason of the foregoing, PICINICH has been placed in fear of his life, suffers significant emotional damages, distress, pain, suffering, loss of self-esteem, self-doubt and has been exposed to disgrace, public humiliation and embarrassment, was deprived of access to his family, was deprived of his constitutional rights and has been damaged in the sum of no less than TEN MILLION DOLLARS ($10,000,000.00), plus punitive damages and attorney's fees.

## AS AND FOR PLAINTIFF'S THIRD CAUSE OF ACTION
## FOR VIOLATIONS OF PICINICH'S FOURTH AND FOURTEENTH AMENDMENT
## RIGHTS FOR MALICIOUS PROSECUTION (1983) AGAINST ALL DEFENDANTS

58.     PICINICH repeats and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

59.     On or about January 6, 2017, PICINICH was arraigned and charged with violations of Vehicle and Traffic Law § 1128(a) and Vehicle and Traffic Law § 1192(4).

60.     As a result of the malicious prosecution, PICINICH was required to pay for the services of a criminal defense attorney at a substantial cost to him.

61.     As a result of the false and unlawful charges, PICINICH was required to make multiple appearances in Court.

62.     Defendants participated in the investigations of allegations against PICINICH, as well as the criminal prosecution against him.

63.     The criminal prosecution was commenced despite Defendants' knowledge that PICINICH did not participate in the alleged crimes and that probable cause for the arrest and initiation of the prosecution did not exist.

64.     The criminal prosecution was continued after Defendant(s) knew that he/she/they had no probable cause for the original arrest and/or initiation of the prosecution existed.

65.     By participating in the arrest and prosecution, which they knew lacked probable cause, Defendants acted with malice against PICINICH.

66.     Defendant(s) prosecuted PICINICH with malice independent of their lack of probable cause.

67.     The prosecution of PICINICH was terminated favorably to him.

68.     As a result of Defendants' malicious prosecution, PICINICH's Fourth and Fourteenth Amendment rights were violated.

69.     As a proximate result of Defendants' intentional and malicious actions, PICINICH was greatly humiliated, injured in his reputation, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish causing damages, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), plus punitive damages and attorney's fees.

PF/D211079/FL2579

### AS AND FOR PLAINTIFF'S FOURTH CAUSE OF ACTION
### FOR FAILURE TO SUPERVISE (1983) AGAINST ALL DEFENDANTS

70.     PICINICH repeats and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

71.     Defendants were responsible for supervising, overseeing, and controlling their subordinates in the Nassau County Police Department, Nassau County Police Department Ambulance Bureau and Nassau County District Attorney's Office.

72.     As a proximate result of Defendants' intentional and malicious actions, PICINICH was greatly humiliated, injured in his reputation, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish causing damages, all to PICINICH's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), plus punitive damages and attorney's fees.

### AS AND FOR PLAINTIFF'S FIFTH CAUSE OF ACTION
### AGAINST NASSAU COUNTY (MONELL CLAIM)

73.     PICINICH repeats and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

74.     Upon information and belief, it was the custom, policy and practice of Defendants to fail to terminate the prosecutions of individuals upon receipt of evidence which would vitiate any probable cause possessed at the time of arrest.

75.     Employees of the Nassau County Police Department and/or the Nassau County District Attorney's Office, such as the individual Defendants in this action, were aware at all

times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, and that they would receive no reprimand or be punished for their conduct.

76.    Employees of the Nassau County Police Department and/or the Nassau County District Attorney's Office, such as the individual Defendants in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, that they would receive no reprimand or be punished for their conduct and, further, that they would be indemnified from civil liability regardless of the illegality or unconstitutionality of their actions.

77.    By failing to supervise, train and reprimand such Police Officers and/or EAB ambulance technicians and/or District Attorney/Assistant District Attorneys, NASSAU COUNTY caused the injuries to PICINICH through the actions and inactions of the individual Defendants.

78.    By maintaining a defacto policy of automatic indemnification, NASSAU COUNTY caused the injuries to PICINICH through the actions and inactions of the individual Defendants.

79.    Upon information and belief, it was the custom, policy and practice of NASSAU COUNTY to authorize and permit certain Police Officers and/or District Attorneys/Assistant District Attorneys, including the individual Defendants, to cause unlawful detentions.

80.    Upon information and belief, it was the custom, policy and practice of NASSAU COUNTY to encourage and cause constitutional violations by the Police Officers and/or EAB AMTs and/or District Attorney/Assistant District Attorneys employed by NASSAU COUNTY, including the violations of PICINICH's constitutional rights by the individual Defendants.

81.     NASSAU COUNTY's failure to take action against its Police Officers and/or EAB AMTs and/or District Attorney/Assistant District Attorneys involved in this incident, and in other similar incidents, was part of a custom, practice and procedure of neglect and deliberate indifference that directly caused the injuries to PICINCH.

82.     As authorized representatives of Defendant NASSAU COUNTY, the Police Officers and/or EAB AMTs' conduct of illegal arrests, searches and seizure of arrestees and official misconduct, such as PICINICH, constituted a custom, policy and policies which renders Defendant NASSAU COUNTY liable to PICINICH as a "Person" acting under the color of state law.

83.     These customs, policies and practices enforced by Defendants were the moving force, proximate cause, and/or affirmative link behind the conduct causing PICINICH's injuries.

84.     Defendant NASSAU COUNTY is therefore liable for violations of PICINICH's constitutional rights as caused by its/their employees, as described in more detail in the paragraphs herein, and PICNICH has suffered damages therefrom.

85.     As a proximate result of Defendant's customs, policies and practices for creating an environment that tolerates, encourages, and condones such constitutional violations, PICINICH was greatly humiliated, injured in his reputation, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish causing damages, all to PICINICH's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), plus attorney's fees.

## AS AND FOR PLAINTIFF'S SIXTH CAUSE OF ACTION
## FOR SUBSTANTIVE DUE PROCESS (1983) AGAINST
## ALL DEFENDANTS

86.     PICINICH repeats and realleges each and every allegation contained in those

paragraphs of the Complaint marked and numbered previously and/or herein with the same force

and effect as if more fully set forth at length below.

87.     As a result of the facts alleged herein, PICINICH was denied his substantive

rights under the United States Constitution.

88.     As a proximate result of Defendants' actions, PICINICH was greatly humiliated,

injured in his reputation, caused to incur attorney's fees, associated legal expenses, and other

special damages, and has suffered great mental anguish causing damages, all to Plaintiff's

damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS

($10,000,000.00), plus punitive damages and attorney's fees.

## AS AND FOR PLAINTIFF'S SEVENTH CAUSE OF ACTION
## FOR VIOLATION OF PLAINTIFF'S PROCEDURAL DUE PROCESS (1983)
## AGAINST ALL DEFENDANTS

89.     PICINICH repeats and realleges each and every allegation contained in those

paragraphs of the Complaint marked and numbered previously and/or herein with the same force

and effect as if more fully set forth at length below.

90.     Defendants initially detained and/or continued the detention of PICINICH without

a proper due process.

91.     As a result of this detention, PICINICH was denied his procedural right under the

United States Constitution.

92.     As a proximate result of Defendants' actions, PICINICH was greatly humiliated,

injured in his reputation, caused to incur attorney's fees, associated legal expenses, and other

PF/D211079/FL2579

special damages, and has suffered great mental anguish causing damages, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), plus punitive damages and attorney's fees.

### AS AND FOR PLAINTIFF'S EIGHTH CAUSE OF ACTION
### FOR NEGLIGENT HIRING, IMPROPER SUPERVISION,
### AND IMPROPER RETENTION (PENDANT) AGAINST NASSAU COUNTY

93.     PICINICH repeats and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously with the same force and effect as if more fully set forth at length herein.

94.     Upon information and belief, it was the custom, policy and practice of NASSAU COUNTY to hire certain Police Officers and/or AMTs, including Defendants AREVALO and/or REED and/or PO JOHN DOES, without conducting the appropriate background checks, investigations, and psychological evaluations.

95.     Upon information and belief, it was the custom, policy and practice of NASSAU COUNTY to conduct inadequate investigations of Police Officers and/or AMT candidates, as was done with Defendants AREVALO and/or REED and/or PO JOHN DOES.

96.     Upon information and belief, it was the custom, policy and practice of NASSAU COUNTY to inadequately supervise the actions and conduct of Police Officers and/or AMTs, including Defendants AREVALO and/or REED and/or PO JOHN DOES.

97.     Upon information and belief, it was the custom, policy and practice of NASSAU COUNTY to continue to employ Police Officers and/or AMTs, including Defendants, AREVALO and/or REED and/or PO JOHN DOES, after it is known that such Police Officers and/or AMTs consistently violate the constitutional rights of persons such as PICINICH.

PF/D211079/FL2579

98.     These customs, policies and practices were the moving force, proximate cause, or affirmative link behind the conduct causing PICINICH's injuries.

99.     NASSAU COUNTY is therefore liable for violations of PICINICH's constitutional rights as caused by Defendants as described in more detail in the foregoing paragraphs; and PICINICH has suffered damages therefrom.

100.    As a proximate result of Defendant's customs, policies and practices for negligent hiring, improper supervision, and improper retention of Police Officers and/or AMTs, PICINICH was greatly humiliated, injured in his reputation, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish, all to PICINICH's damage in a sum to be provided at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), plus punitive damages.

**AS AND FOR PLAINTIFF'S NINTH CAUSE OF ACTION
FOR *RESPONDEAT SUPERIOR* (PENDENT)**

101.    PICINICH repeats and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously with the same force and effect as if more fully set forth at length herein.

102.    By virtue of AREVALO and/or REED and/or PO JOHN DOES' employment with NASSAU COUNTY and their actions within the scope of their employment, NASSAU COUNTY is liable for AREVALO and/or REED and/or PO JOHN DOES' actions under a theory of *respondeat superior*.

103.    As a proximate result of Defendant's intentional and malicious actions, PICINICH was greatly humiliated, injured in his reputation, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish, all

to PICINICH's damage in a sum to be provided at trial but not less than TEN MILLION

DOLLARS ($10,000,000.00), plus punitive damages.

### AS AND FOR PLAINTIFF'S TENTH CAUSE OF ACTION
### FOR FALSE ARREST (PENDENT)

104.    PICINICH repeats and realleges each and every allegation contained in those

paragraphs of the Complaint marked and numbered previously with the same force and effect as

if more fully set forth a length herein.

105.    Defendants acting under color of law and powers prescribed to them by the

United States Constitution, federal and state laws, subjected PICINICH to false arrest and

assault. Defendants' improper and wrongful arrest was without any violation of the law and

absent probable cause or any reasonable suspicion of any criminal activity having been

committed by PICINICH.

106.    On or about January 6, 2017, PICINICH was falsely arrested, falsely seized, and

falsely detained, deprived of his freedom, subjected to humiliation and ridicule, his picture

unlawfully taken and unlawfully imprisoned by Defendants in violation of the civil and

constitutional rights afforded to him via the Constitution of the State of New York.

107.    On or about January 6, 2017, Defendants falsely arrested, falsely seized, and

falsely detained, PICINICH, thus depriving him of his freedom and violating his rights. Said

seizure was made without probable cause, as Defendants were of the knowledge that PICINICH

had committed no crime.

108.    Such seizure, arrest, and detention were ordered, directed, and carried out by

Defendants all of whom who actively instigated and encouraged the violation of PICINICH's

rights.

109.    Defendants each took an active role in creating and manufacturing the allegations against PICINICH, solely for the purpose of depriving PICINICH of his freedom, and not to effectuate justice.

110.    As part of the false arrest, detention, and accusations, Defendants caused PICINICH to be deprived of his liberty, without probable cause. Furthermore, as a direct result of said actions, PICINICH was unjustly exposed to disgrace, public humiliation, injury and embarrassment.

111.    Defendants individually and collectively knew at the time of PICINICH's arrest, and at all times since then, that there was no evidence to support any allegation that he had violated New York VTL § 1192(3).

112.    In arresting and detaining PICINICH, Defendants knew or should have known they were violating federal law and PICINICH's constitutional rights as set forth herein and had failed to prevent the same and, therefore, acted in concert to harm PICINICH.

113.    Defendants, separately and in concert, acted outside the scope of their jurisdiction and without authorization of law and each of Defendants, separately and in concert, acted willfully, knowingly, and purposefully with the specific intent to deprive PICINICH of his right to freedom from illegal seizure of his person, freedom from illegal detention and imprisonment; all rights that are secured to PICINICH by the Constitution of the State of New York.

114.    As a direct and proximate result of the aforesaid acts of Defendants, PICINICH suffered great physical harm, mental anguish, and violation of rights from then until now and he will continue to so suffer in the future having been greatly humiliated and mentally injured, as a result of the foregoing acts of Defendants.

115.    PICINICH was forced to incur great expense and special damages to date for his injuries, attorney's fees, investigation expenses, loss and other expenses in clearing his name against the unfounded and unwarranted allegations by Defendants which have been a serious burden to PICINICH.

116.    As a result of said baseless false arrest and abuse of process, PICINICH has suffered continued emotional damage, including prolonged stress and anxiety, fear, and frustration, and has been harmed monetarily in his incurring of medical fees, attorney fees, lost business opportunities, and other expenses incurred.

117.    As a proximate result of Defendants' intentional and malicious actions, PICINICH was greatly humiliated, injured in his reputation, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great pain and mental anguish, all to PICINICH's damage in a sum to be provided at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), plus punitive damages.

### AS AND FOR PLAINTIFF'S ELEVENTH CAUSE OF ACTION
### FOR MALICIOUS PROSECUTION AGAINST ALL DEFENDANTS (PENDENT)

118.    PICINICH repeats and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

119.    On or about January 6, 2017, PICINICH was arraigned and charged with violations of Vehicle and Traffic Law § 1128(a) and Vehicle and Traffic Law § 1192(4).

120.    As a result of the malicious prosecution, PICINICH was required to pay for the services of a criminal defense attorney at a substantial cost to him.

121.    As a result of the false and unlawful charges, PICINICH was required to make multiple appearances in Court.

122.   Defendants participated in the investigations of allegations against PICINICH, as well as the criminal prosecution against him.

123.   The criminal prosecution was commenced despite Defendants' knowledge that PICINICH did not participate in the alleged crimes and that probable cause for the arrest and initiation of the prosecution did not exist.

124.   The criminal prosecution was continued after Defendant(s) knew that he/she/they had no probable cause for the original arrest and/or initiation of the prosecution existed.

125.   By participating in the arrest and prosecution which they knew lacked probable cause, Defendants acted with malice against PICINICH.

126.   Defendant(s) prosecuted PICINICH with malice independent of their lack of probable cause.

127.   The prosecution of PICINICH was terminated favorably to him.

128.   As a result of Defendants' malicious prosecution, PICINICH's Fourth and Fourteenth Amendment rights were violated.

129.   As a proximate result of Defendants' intentional and malicious actions, PICINICH was greatly humiliated, injured in his reputation, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish causing damages, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), plus punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands the following relief:

A.       Under the FIRST CAUSE OF ACTION, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages and attorney's fees.

B.       Under the SECOND CAUSE OF ACTION, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages and attorney's fees.

C.       Under the THIRD CAUSE OF ACTION, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages and attorney's fees.

D.       Under the FOURTH CAUSE OF ACTION, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages and attorney's fees.

E.       Under the FIFTH CAUSE OF ACTION, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus attorney's fees.

F.       Under the SIXTH CAUSE OF ACTION, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages and attorney's fees.

G.       Under the SEVENTH CAUSE OF ACTION, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages and attorney's fees.

H.       Under the EIGHTH CAUSE OF ACTION, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages.

I.       Under the NINTH CAUSE OF ACTION, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages.

J.       Under the TENTH CAUSE OF ACTION, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages.

PF/D211079/FL2579

K.       Under the ELEVENTH CAUSE OF ACTION, in the amount of TEN MILLION

($10,000,000.00) DOLLARS plus punitive damages.

Dated: Lake Success, New York
        April 2, 2018

                            Respectfully Submitted,
                            THE RUSSELL FRIEDMAN LAW GROUP, LLP
                            *Attorneys for Plaintiff*

            By:       _____/S/Charles Horn_____
                            Charles Horn
                            3000 Marcus Avenue, Suite 2E03
                            Lake Success, New York 11042
                            Tel: 516.355.9696

PF/D211079/FL2579